The undersigned reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Harris. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties or their representatives. Having reviewed the competent evidence of record, the Full Commission affirms the Opinion and Award of Deputy Commissioner Harris with minor modifications.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the deputy commissioner as:
 STIPULATION
1. It is stipulated that all parties have been correctly designated and that there is no question as to the misjoinder or nonjoinder of parties.
 * * * * * * * * * * * *Page 2 
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff and defendants are subject to the provisions of the North Carolina Workers' Compensation Act, and the North Carolina Industrial Commission has jurisdiction over this claim.
2. On December 20, 2004, plaintiff was employed by defendant and Builders Mutual Insurance Company was the carrier on risk.
3. Plaintiff was 29 years old at the time of the hearing before the deputy commissioner. Since 1993, plaintiff has worked as a brick mason. From December 1993 until March 31, 2004, plaintiff worked for Felix Paredes and Francisco Dominguez. Starting on April 1, 2004, plaintiff worked as a subcontractor for defendant.
4. Prior to December 2004, plaintiff's work as a brick mason regularly required him to bend his knees, squat, kneel and do heavy lifting. Plaintiff usually worked six days per week, at least eight hours per day. Plaintiff's work primarily involved laying brick for floors and foundations of residential and commercial buildings. Every workday, plaintiff typically spent at least two hours kneeling, and when he was doing work at floor level, he spent six to seven hours of the workday on his knees. Plaintiff wore kneepads for his work. Plaintiff also spent about three hours per workday squatting. Plaintiff often pushed a wheelbarrow, carrying up to 200 pounds of bricks. Plaintiff did all of these tasks for at least two years prior to December 2004.
5. Prior to December 20, 2004, plaintiff did not experience any problematic symptoms with his right knee. *Page 3 
6. On December 20, 2004, plaintiff was laying pavers, which required him to kneel. At about 11 a.m., plaintiff got up and felt a sharp pain in his right knee. Plaintiff noticed that his right knee was swollen. Plaintiff stopped doing the paver work and spent the rest of the day supervising other workers and performing light work.
7. Because the pain and swelling in his right knee did not abate, plaintiff sought treatment at Doctor's Urgent Care, which referred plaintiff to Cary Orthopaedic and Sports Medicine Specialists.
8. On February 8, 2005, plaintiff presented to Cary Orthopaedic and Sports Medicine Specialists where he saw Dr. Douglas L. Gollehon, a board-certified orthopaedic surgeon and expert on knee injuries. Plaintiff's right knee was still swollen, and he reported that his job involved squatting, kneeling and lifting and carrying heavy objects. Plaintiff reported that the pain and swelling in his right knee had begun about one and a half months prior, when he had difficulty getting up after being on his knees for quite some time. Dr. Gollehon aspirated the knee and gave plaintiff a steroid injection. Dr. Gollehon's impression was that plaintiff had probably damaged the subpatellar articular surface of his right knee. Dr. Gollehon believed that plaintiff's symptoms were consistent with a chronic overuse or repetitive injury from direct pressure of the kneecap likely on the ground.
9. After a February 22, 2005 MRI showed articular surface damage on the patellar and lateral trochlear surfaces of plaintiff's right knee, Dr. Gollehon's impression was that plaintiff had a work-induced articular injury at the patellofemoral space.
10. Following the failure of conservative measures, Dr. Gollehon recommended arthroscopic surgery for plaintiff. On April 13, 2005, Dr. Gollehon performed arthroscopic *Page 4 
surgery on plaintiff's right knee. Dr. Gollehon's post-operative diagnosis was hypertrophic synovitis and articular damage of the medical femoral condyle and patella.
11. Plaintiff has followed up for further treatment for his right knee condition with Dr. Gollehon since the surgery.
12. Dr. Gollehon testified that plaintiff's employment as a brick mason was a significant contributing cause of the articular damage in his right knee. In arriving at this conclusion, Dr. Gollehon considered all of the job duties and circumstances of plaintiff's work as a brick mason as set out in Finding of Fact No. 6 above.
13. Plaintiff's employment as a brick mason placed him at an increased risk of developing the articular damage in his right knee.
14. Dr. Gollehon has treated at least one other brick mason with the same type of articular knee damage. Plaintiff also knows two other brick masons who have suffered articular knee damage.
15. Dr. Gollehon also diagnosed plaintiff with synovitis in his right knee, which is inflammation and irritation of the lining tissue of the joint. Dr. Gollehon testified that the synovitis was caused by the joint surface damage that resulted from the kneeling, squatting, bending and extended applications of pressure on the knees that plaintiff's work as a brick mason entailed.
16. Dr. Gollehon's treatment and diagnostic testing done for plaintiff's right knee condition has been reasonably required to effect a cure, provide relief and/or lessen the period of plaintiff's disability.
17. Although plaintiff has continued to work since December 20, 2004, he has had to miss some time sporadically from work in order to receive treatment for his right knee condition. *Page 5 
Plaintiff has also had to limit his work activities because of his inability, since December 20, 2004, to kneel, squat or bend his right knee. Plaintiff continues to have pain in his right knee.
18. Dr. Gollehon testified that plaintiff's right knee condition will likely worsen.
19. Plaintiff has paid for all of his medical treatment out of his own pocket.
20. There is no record of plaintiff's exact earnings during the 52 weeks preceding December 20, 2004. However, his 2004 federal tax return shows that in the nine months in 2004 in which plaintiff worked as a subcontractor for defendant, plaintiff's net earnings were $25,680.00. This figure is derived from the $289,098.00 that plaintiff grossed from defendant, less contract labor, vehicle expenses, insurance, maintenance, supplies, travel and meals, utilities and other expenses. Dividing $25,680.00 by the 40-week period from April 1, 2004 through December 31, 2004 yields an average weekly wage of $642.00. It is found that this is a fair calculation of plaintiff's average weekly wage pursuant to N.C. Gen. Stat. § 97-2(5). Therefore, plaintiff's average weekly wage is $642.00.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Plaintiff suffers from two compensable occupational diseases in his right knee, articular damage and synovitis. Plaintiff's conditions were caused by his work as a brick mason, and plaintiff was at an increased risk, because of his work as a brick mason, of developing these conditions over that of the general public. N.C. Gen. Stat. §§ 97-53(13);97-53(20).
2. Plaintiff is entitled to have defendants provide medical treatment for his compensable right knee conditions. N.C. Gen. Stat. §§ 97-25,97-59. Plaintiff is also entitled to *Page 6 
have defendants reimburse him for his out-of-pocket medical expenses for the previous treatment he has received for his compensable right knee conditions.
3. There has been no finding of maximum medical improvement, and there is insufficient evidence to determine at this time whether plaintiff is entitled to any total or partial disability compensation. As such, these issues should be reserved for subsequent determination by the Industrial Commission. See Georgette L. Hill v. Caswell Center, I.C. No. 536170 (Full Commission, February 17, 1997).
4. Plaintiff's counsel is entitled to an attorney's fee equal to 25 percent of the reimbursement that plaintiff receives from defendant for his out-of-pocket medical expenses. Palmer v. Jackson, 157 N.C. App. 625
(2003); Palmer v. Jackson, 629 S.E.2d 623 (2006).
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following:
 AWARD
1. Dr. Gollehon is hereby designated as plaintiff's treating physician. Defendants shall authorize and pay for the treatment that Dr. Gollehon recommends for plaintiff's compensable right knee condition(s), including but not limited to diagnostic testing, prescriptions and referrals, pursuant to the Industrial Commission's fee schedule.
2. Defendants shall reimburse plaintiff in full for his out-of-pocket medical expenses incurred for the treatment of his compensable right knee condition(s) since December 20, 2004.
3. To the extent that there remain any outstanding balances for medical treatment that plaintiff has received for his compensable right knee condition(s) since December 20, 2004, defendants shall pay these balances in full. *Page 7 
4. The issues of plaintiff's entitlement to total and/or partial disability compensation are reserved for subsequent determination upon the filing of a new Form 33 Request for Hearing.
5. As plaintiff's attorney's fee, defendants shall pay to plaintiff's counsel an amount equal to 25 percent of plaintiff's out-of-pocket medical expenses incurred for treatment of plaintiff's right knee injury. This attorney's fee is in addition to, and shall not reduce the amount of, the reimbursement to plaintiff.
6. Defendants shall pay the costs.
This the 22nd day of March, 2007.
S/__________________
BUCK LATTIMORE
CHAIRMAN
CONCURRING:
S/__________________
PAMELA T. YOUNG
COMMISSIONER
S/__________________
BERNADINE S. BALLANCE
 COMMISSIONER *Page 1